AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of Texas

United States Courts
Southern District of Texas
FILED

*June 07, 2023*

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) |
| Storage Unit Number A235 | ) |
| 6040 Westpark Drive | ) |
| Houston, TX 77057 | ) |

Case No. **4:23-mj-1214**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

(See attachment "A")

located in the _____Southern_____ District of _____Texas_____ , there is now concealed *(identify the person or describe the property to be seized)*:

(See attachment "B")

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. 922(a)(1)(A) | Dealing in firearms without a license |
| Title 18 U.S.C. 922(a)(6) | Providing false statements to a federally licensed firearms dealer |
| Title 21 U.S.C. 841(a)(1) | Possession with intent to distribute a controlled substance |

The application is based on these facts:

(See the affidavit in support of search warant)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

James Dixon, ATF Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____Telephone_____ *(specify reliable electronic means).*

Date: _____June 07, 2023_____

_____
*Judge's signature*

City and state: _Houston, Texas_

United States Magistrate Judge Christina Bryan
_____
*Printed name and title*

| Print | Save As... | Attach | Reset |
|---|---|---|---|

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**HOUSTON DIVISION**

| | |
|---|---|
| IN THE MATER OF THE SEARCH OF **STORAGE UNIT A235 LOCATED AT 6040 WESTPARK DR., HOUSTON, TX 77057** | Case No. **4:23-mj-1214** |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, James Dixon, depose and say under penalty of perjury as follows:

**INTRODUCTION**

1.      I make this affidavit in support of an application under Rule 41 of the

Federal Rules of Criminal Procedure for a search warrant to search the following

**Premises**:

the storage unit, marked as A235, located at **6040 Westpark Drive Houston,**

**TX 77057**, as more particularly described in Attachment A,

for the items enumerated in Attachment B, which constitute evidence, contraband,

fruits, and instrumentalities of violations of Title 18, United States Code, Section

922(a)(1)(A) (dealing in firearms without a license), Title 18, United States Code,

922(a)(6) (Providing False Statements to a Federally Licensed Firearms Dealer),

Title 18, United States Code, 922(a)(3) (Illegal Transportation or Receipt in State of

1

Residency of Firearm Purchased or Acquired Outside State of Residency) and; Title 18, United States Code, Section 371 (Conspiracy) committed by Dexter W. Roberts and others.

### A. Agent Experience

2.      As a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF" or "Agency"), I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). Therefore, I am empowered to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

3.      I have been a Special Agent with ATF since April of 2021. I am currently assigned to the Atlanta Group I, which is involved in investigating various facets of firearms trafficking. I am a graduate of the Federal Law Enforcement Training Centers in Artesia, NM, in 2011 and Glenco, GA, in 2021, as well as the ATF National Academy (2021). Prior to becoming an ATF Special Agent, I was a Supervisory Federal Air Marshal (2019-2021) and a Federal Air Marshal (2011-2019).  Additionally, I was a certified police officer in the State of Georgia as a Sergeant (2008-2011) and as an Officer (2003-2008) for the Henry County Police Department. I hold a Bachelor's degree in Justice Studies from Georgia Southern University and a Master's degree in Emergency Management from Columbia Southern University. During my tenure as an ATF SA and sworn Law Enforcement Officer, I have participated in numerous criminal

2

investigations, and the execution of search warrants and arrest warrants, where illegally purchased/trafficked firearms, narcotics, electronic scales, packaging materials, books/ledgers indicating sales, receipts, computers, cellular telephones, and other items used to facilitate firearms and narcotics trafficking were seized. I have personally conducted and/or assisted in investigations of criminal acts involving, but not limited to, false statements intended or likely to deceive Federal Firearms Licensees ("FFLs") regarding facts material to the lawfulness of the sale of a firearm, in violation of 18 U.S.C. § 922(a)(6). I have also conducted multiple investigations into the unlawful possession of firearms by prohibited persons.  During my tenure as an ATF SA and sworn Law Enforcement Officer, I have debriefed defendants, co-conspirators, and witnesses who have been involved in the trafficking of both firearms and illegal drugs.

4.      Based on my training and experience, I am aware that individuals involved in firearms and narcotics sale or trafficking often utilize multiple locations to store contraband and the related proceeds.  These locations include storage units as well as residences and/or vehicles.  These individuals will also often transport firearms or controlled substances between these locations in order to thwart law enforcement attempts to locate stash houses/locations and identify of the individuals and their co-conspirators.

5.      Through my training, experience, and participation in federal

firearms investigations, I have learned that firearms traffickers and individuals involved in illegal firearms dealing: regularly maintain firearms and other contraband in personal spaces until they transfer or sell the property; often hide firearms by concealing them in a variety of places in and around spaces under their direct or indirect control; maintain notes, ledgers, journals, and/or documents (electronic and physical) for the purpose of tracking their weapon purchases/sales and monetary proceeds; retain financial-related documentation (electronic and physical) (including, but not limited to, bank and credit account information, tax documents, and documentation relating to real property); retain documentation relating to travel; routinely maintain packaging and repackaging tools and materials inside the property where firearms are stored and/or manufactured; use cell phones, computers, and other electronic media devices to coordinate the purchase, sale, and/or distribution of firearms, especially where illegal firearms are being sold online; regularly pose for photographs while in possession of firearms for posting on social media sites or for proof of their possession of the property to be trafficked; and use banks, real property, vehicles, jewelry, and tangible assets of value to launder their illegal proceeds and structure transactions through banking systems or businesses to hide their illicit gains.

### B.  Sources of Information

6.      The information set forth in this affidavit is based on my personal

4

observations and knowledge and may also be based on: (a) my training and experience, (b) information obtained from other individuals participating in the investigation, (c) reports and/or business records, (d) recorded conversations, and (e) communications with other individuals who have personal knowledge of the events and circumstances described herein. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included in this affidavit every detail of the investigation. Rather, I have set forth facts that I believe are sufficient to establish probable cause for the issuance of the requested search warrant. Unless specifically indicated otherwise, any conversations and statements described in this affidavit are related in substance and in part only.

C. **Probable Cause Basis**

*ROBERTS' Firearms Purchases*

7.     Dexter ROBERTS has a Driver's License for the State of Florida, but as discussed below, appears to reside at an address in Austell, Georgia in the Northern District of Georgia. In January 2023, ROBERTS provided the address 2043 Oakbluff Dr, Austell, GA 30106 to APD Officers as his residence. A law enforcement database indicated that ROBERTS had been associated with that address since October 2015, and he is currently still associated with it. Additionally, open-source business records indicated five businesses had been registered in Georgia by ROBERTS. 2043 Oakbluff Dr, Austell, GA was listed as the "agent address" on all five of the businesses and was also listed as the "office address" on three of the businesses. Based upon ATF record checks, ROBERTS is

not licensed to deal, import, manufacture, or collect firearms.

8.     According to ATF records, ROBERTS purchased at least forty-nine (49) firearms between approximately December 24, 2022, and February 15, 2023, from the same federal firearms licensee ("FFL"), Miami Police Depot, located at 1040 E 49th St, Hialeah, FL 33013.  In conjunction with each purchase, ROBERTS was required to state on an ATF Form 4473 ("4473") that must be kept in the FFL's records that he was the intended transferee of the firearms.  I have reviewed some of ROBERTS' 4473s and confirmed that he did make that representation.

9.     ATF records revealed that ROBERTS purchased those 49 firearms on four different dates at Miami Police Depot.  On those four occasions, 48 of the firearms ROBERTS purchased were Glocks.  Based on my training and experience, the purchase of large quantities of the same make and similar models/calibers of firearms is an indicator of potential straw purchasing and firearms trafficking activity.

10.     My review of ATF records also revealed that two of the 49 firearms that ROBERTS purchased were subsequently recovered in the possession of other individuals and traced by law enforcement officers in Canada. Most recently, on or about April 25, 2023, authorities in Québec, Canada recovered a Glock, model 17, 9mm pistol that ROBERTS had purchased approximately 122 days earlier, on or about December 24, 2022, at Miami Police Depot.  Additionally, on February 3, 2023, authorities in Ontario, Canada recovered a Glock, model 19X, 9mm pistol that ROBERTS had purchased approximately 41 days earlier, on or about December 24, 2022, at Miami Police Depot.  Prior to that, on or about January 23, 2023, authorities in Ontario, Canada recovered a Glock, model 30S, .45 cal pistol that ROBERTS had purchased approximately 30 days earlier, also on or about

December 24, 2022, at Miami Police Depot.

11.    On January 18, 2023, ROBERTS contacted Atlanta Police Department (APD) to report that he had been robbed at Circle K gas station, located at 74 Northside Dr NW, Atlanta, GA 30313. The APD police report reflects an address of 2043 Oakbluff Dr, Austell, GA 30106. ROBERTS told APD officers that, on the previous night, January 17, 2023, he had been robbed at that same gas station, and guns were stolen from him. The APD report stated that, in response to questions about his report, ROBERTS "became irate" and "changed his story multiple times."

12.    I reviewed the APD bodycam footage and noted the following:

a. ROBERTS told officers that, on January 17, 2023, he was sitting in his car at the Circle K gas station attempting to transfer money into an account before pumping gas in his car. ROBERTS stated an unknown individual approached his car and proceeded to rob ROBERTS. Eventually, another car pulled alongside ROBERTS' car. A few more individuals exited the vehicle and began to rummage through ROBERTS' vehicle, eventually taking 13 guns from ROBERTS' trunk.

b. When asked by APD, ROBERTS indicated he had purchased the firearms in Miami in the last week of December (December of 2022). He further stated that had purchased 13 firearms at that time because he was purchasing a new house and intended to keep firearms in several places around the house and because he had attended an "expo" and therefore, the guns were cheaper. (Agent Note: After this interview, ROBERTS purchased at least 36 more Glock pistols in February 2023).

7

c.  ROBERTS told APD that he lived at 2043 Oakbluff Dr, Austell, GA 30106.  He stated he had paperwork and mail to prove he lived there. ROBERTS confirmed he had with APD that he had a Florida ID.

d.  When asked by APD why ROBERTS was keeping 13 firearms in his trunk, he stated he had been back from Miami for about a week, but he hadn't had the opportunity to take them inside yet.

e.  An APD officer explained to ROBERTS that she had interviewed an employee that had been at the gas station the previous night. The employee stated that they saw the individuals with ROBERTS, and they saw that the individuals had guns, but they never saw the individuals pointing guns at ROBERTS.

13.    I reviewed surveillance footage from the Circle K gas station from January 17, 2023, just before midnight, and observed the following:

a.  At approximately 11:51pm ROBERTS arrived at the gas station and parked his car.

b.  Approximately two minutes later, a black sedan pulled into the parking lot and parked.  An individual exited that vehicle and approached the front driver's side window of ROBERTS' vehicle, apparently engaging ROBERTS in conversation.

c.  Approximately one minute later, ROBERTS exited his vehicle and stood beside the unknown individual, the two apparently still conversing.

d.  Approximately two minutes later, the black sedan moved from its previous position and parked alongside ROBERTS' vehicle.

e.  Approximately one minute later, three more unidentified individuals

exited the black sedan and also stood around ROBERTS' vehicle. Two of those individuals then started to rummage through ROBERTS' vehicle while ROBERTS stood at the hood of his car, apparently still conversing with one of the individuals.

f. Approximately one minute later, the two individuals who were rummaging through ROBERTS' vehicle, opened the trunk and started to rummage through it as well.

g. Approximately one minute later, ROBERTS and one of the unidentified individuals walked together across the parking lot to the door of the gas station convenience store.

h. The exterior camera footage that was obtained stopped at that point.

i. Throughout the entirety of the footage, ROBERTS and the other unknown individuals appeared to conduct themselves in a calm manner, and, at no point throughout the footage, were there any overt indications that ROBERTS was being robbed or was otherwise fearful of the unknown individuals.

14. The camera footage that was obtained spanned a period of approximately 9 minutes of time, and ROBERTS and the other individuals were still together when the footage ended. Based upon my training and experience, straw purchasers and firearms traffickers may attempt to falsely report firearms as stolen in order to conceal their straw purchasing and firearm trafficking activities.

*Additional Evidence of ROBERTS' Involvement in Suspected Firearms Trafficking and*

*Connection to Justin BOYA*

15.     Based on information obtained from Cornwall Police Department in Ontario, Canada, on or about April 3, 2023, Canadian authorities executed a search warrant on a vehicle, from which they recovered 36 handguns believed to be connected to Justin BOYA. The warrant was executed shortly after BOYA's death, and in connection with an investigation into his death. Canadian authorities also seized two phones belonging to BOYA.

16.     Call logs for one of the phones show communications with ROBERTS. According to the call logs, ROBERTS (via a previous number with service through AT&T), contacted BOYA's phone three times from March 28, 2023, to March 31, 2023. Multiple phone numbers known by ATF to be used by ROBERTS were stored in BOYA's phone within various applications, including WhatsApp, with the contact names "Science," "Silver Back," and "Dex."

17.     Messages involving ROBERTS, extracted from BOYA's phone[1], discuss firearm purchasing activities, which, based on my training and experience, are consistent with straw purchasing and illegal firearms trafficking.

18.     For example:

---

[1] Some of the messages extracted from BOYA's phone involving ROBERTS were extracted from a messaging application, Therma.  For the Therma messages, the extraction software was unable to label the sender of the messages, only that the message string contained particular participants.

a. On December 12, 2022, the messages between the ROBERTS and
BOYA include a photograph of what appears to be a Glock pistol,
followed by "G26" and then "Do I have the Ok to place the order".

b. On March 1, 2023, ROBERTS and BOYA exchanged a picture of an
AR-style pistol, followed by a message "Should we buy".

On March 4, 2023, ROBERTS and BOYA exchanged multiple
pictures of what appears to be a .50 caliber rifle, followed by a
message of "Pic of glocks with it".  Later that day, a message states,
"special instructions from M" followed by, "take it to Houston".
Later, the address "Hyatt Place Houston-North, 300 United Leuvad
Cir, Houston, TX 77060" is sent.

19.     Other messages extracted from BOYA's phone discuss the use of
storage units in different areas of the United States.

20.     For example:

a. On December 10, 2022, in a text chain discussing "Dex", as well as
specifically mentioning Houston, Texas and Sugar Land, Texas,
BOYA and an unknown party exchange the following messages
"Booked storage", "Have access to storage 6am to 9pm", "Its 24 hours
but for security reasons those are the hours i have access in".

b. On February 12, 2023, the following message, believed to be written
by ROBERTS, was sent: "Brother please be patient with me.... I just
had to drive all the way down from Tallahassee Florida to Fort
Lauderdale where the storage is located just to take some pictures
brother . Now I got to turn around and go back to Atlanta to me

another deadline for tomorrow. Also keep in mind that the other orders are coming in for this contract and they have been sitting and at some point my guy in the store is going to have to put them out on display to be sold ◆◆".

   c. On March 8, 2023, BOYA and an unknown party exchange the following message "Going to my storage unit now". This message is sent following a long discussion about the cost of moving firearms to Indiana and what avenues of transportation are available.

21. ROBERTS, referred to as "Science," is referenced numerous times by BOYA in messages with other people. For example:

   a. On March 18, 2023, BOYA messages an unknown person "Science just here sleeping", and sends a picture of ROBERTS in a bed, appearing to be asleep.

   b. On March 6, 2023, BOYA and an unknown person have the following exchange: "So tell Science to go ahead and grab the rest", "Yes, Im on him now", "Mex Guy wants a barret and all 10 mini mis after this", "I need 100 glocks", "for home", "So get all these done should make like 150k usd", "the 100 glocks get cheap jump Elon for 500 and I'll give you 100 per jump and 100 per glock, so 20K right there, then we making 75k each usd on the mini mis".

   c. Based upon my training experience, the March 6, 2023, text exchange indicates that ROBERTS (referred to as Science) would "grab the rest", likely referring to firearms. The text exchange likely indicates

that BOYA and the other individual are discussing obtaining and selling large quantities of firearms.

22.     Based on information provided by AT&T to ATF agents, pursuant to a subpoena, I believe ROBERTS discontinued AT&T service to his prior device on April 20, 2023.  Based on my training and experience, it is common for individuals engaged in criminal conspiracy to frequently change numbers and providers, in part to make it more difficult for law enforcement officers to locate them.

23.     I have reviewed historic cell site information for ROBERTS' prior device with service through AT&T, pursuant to a search warrant. The historical information corroborated ROBERTS living in Austell, but also showed him travelling widely throughout the United States in a route that repeated itself. The route spanned the eastern seaboard of the United States from Miami, Florida to Malone, New York, as far northwest as Grand Rapids, Michigan, and as far southwest as Dallas, Texas.

24.     In my experience and training, travel to cities near the Canadian border (as Malone, New York and Grand Rapids, Michigan both are) is consistent with firearms trafficking, as Canada has relatively strict gun control laws and black-market guns can therefore be sold in Canada at a premium.

25.     I have reviewed Kentucky State Police (KSP) report (32-23-0282), documenting the seizure of $20,000 USD from Dexter ROBERTS.  The report, provided by KSP Trooper Ethan Whitlock, describes a May 18, 2023 traffic stop and the subsequent interaction with ROBERTS. The report also describes the packaging of the currency and the canine (k-9) alert on the currency, as well as

the story ROBERTS gave for having the currency and his refusal to provide documentation for having the currency.

26.     I have learned, based on my training and experience, that it is common for traffickers in firearms and drugs to have large amounts of currency without documentation for how the currency was obtained.

*__Evidence of ROBERTS drug trafficking__*

27.     Messages from BOYA's phone, involving ROBERTS, show numerous examples of drug trafficking.

28.     For example, On March 23, 2023, ROBERTS sent the following message to BOYA "I need 20 for samples of the ex ASAP for my Miami distro 10 to leave on bus to Nassau on Monday."

29.     Another message, exchanged between BOYA and ROBERTS, on January 9, 2023, "Question when you said $7,000 for the Pink Molly Is that for 1 brick ? Or 1 unit ?" .  this message is immediately followed by photographs of the suspected drugs.



*Evidence of ROBERTS use of the target storage unit*

30.    I have reviewed geolocation data, for ROBERTS' current cellular device, provided by T-Mobile, pursuant to a search warrant signed by United States Magistrate Judge Justin S. Anand on May 17, 2023.

31.    The data shows ROBERTS visited the immediate vicinity of a U-Haul storage facility, located at **6040 Westpark Drive Houston, TX 77057** on May 20, 2023, and May 21, 2023.

32.    Specifically, ROBERTS was present at or very near the facility at the following dates/times (eastern daylight time).

   a.  05/21/2023 at 1227hrs 32m

   b.  05/21/23 at 1257hrs 51m

   c.  05/21/2023 at 1242hrs 38m

   d.  05/21/2023 at 1312hrs 14m

e. 05/20/2023 at 1857hrs 36m

f. 05/20/2023 at 1927hrs 25m

g. 05/20/2023 at 1912hrs 25m

33.     I have also reviewed documents provided by U-Haul pursuant to a Grand Jury subpoena. The documents show that ROBERTS, in conjunction with a female subject believed to be Aubreona Whitfield, rented unit A235 on May 20, 2023, at 1800hrs.

34.     The documents show the unit was initially rented by Whitfield on May 20, 2023, and ROBERTS was added as a user on May 21, 2023.

35.     The documents also show the unit was entered utilizing an electronic code, specific to the Whitfield/ROBERTS account, on May 20, 2023, at 1810hrs and again on May 21, 2023, at 1144hrs.

36.     According to U-Haul, the unit has not been accessed since the May 21, 2023, entry.

37.     Videotape of the time periods during which the unit was accessed has been subpoenaed, but not yet received.

38.     Based on my training and experience I know traffickers will often utilize a 3rd party to conduct business in their name and traffickers rely upon local points of contact to assist with their criminal enterprise.

## **CONCLUSION**

1.     Based on the foregoing information, I respectfully submit that there is probable cause to believe that evidence of violations of Title 18, United States Code, Section 922(a)(1)(A) (dealing in firearms without a license), Title 18, United States Code, 922(a)(6) (Providing False Statements to a Federally Licensed Firearms Dealer), Title 18, United States Code, 922(a)(3) (Illegal Transportation or Receipt in State of Residency of Firearm Purchased or Acquired Outside State of Residency), Title 18, United States Code, 922(a)(1) (unlawful firearms dealing, shipping or transportation) and; Title 18, United States Code, Section 371 (Conspiracy) committed by Dexter W. Roberts and others and is located at and on the **Premises** described in Attachment A, and that this evidence, listed in Attachment B, is contraband, the fruits of crime, or things otherwise criminally possessed, and/or is property which is or has been used as the means of committing the foregoing offenses. I therefore respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

Respectfully submitted,

James Dixon
Special Agent
ATF

Telephonically subscribed to and sworn to on June 07, 2023 and I find probable cause

HONRABLE CHRISTINA A. BRYAN
UNITED STATES MAGISTRATE JUDGE

## <u>ATTACHMENT A</u>

## PROPERTY TO BE SEARCHED

The property to be searched is a storage unit in Houston, Texas,

**Unit A235, located at 6040 Westpark Drive Houston, TX 77057**.

## ATTACHMENT B

*Property to be Seized*

The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 18, United States Code, Section 922(a)(1)(A) (dealing in firearms without a license); Title 18, United States Code, 922(a)(6) (Providing False Statements to a Federally Licensed Firearms Dealer); Title 18, United States Code, 922(a)(3) (Illegal Transportation or Receipt in State of Residency of Firearm Purchased or Acquired Outside State of Residency); Title 18, United States Code, 922(a)(1) (unlawful firearms dealing, shipping or transportation); and Title 18, United States Code, Section 371 (Conspiracy), those violations involving Dexter ROBERTS and others and occurring after December 1, 2022, including:

   a.   Firearms, including frames/receivers, and any firearm parts and accessories;

   b.   Firearms packaging materials, sales literature, and receipts;

   c.   Controlled substances;

   d.   Cellular telephones, computers, and other electronic storage devices;

   e.   United States Currency;

   f.   Logs or ledgers related to the sale or trafficking of firearms and/or controlled substances;

   g.   Documents, receipts, or other paperwork related to the rental of the **target storage unit** or other storage units or vehicles; and

   h.   Documents identifying the renter or user of the storage unit; and

     i.      Financial documentation.

